IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IN RE THE APPLICATION OF   *
  *
JUAN DAVID CARDONA RUIZ,   *
  Petitioner,   *
  *
v.   *
  *
JERISSE LOUISE AGUEY ZINSOU,   *
  Respondent.   *
  *

Civil Action File
No.: 1:22-cv-02293-SDG

## TRIAL BRIEF

COMES NOW, JUAN DAVID CARDONA RUIZ, Petitioner in the above-styled matter, and files this, his Trial Brief, and respectfully shows this Court as follows:

## I.  FACTUAL BACKGROUND

The present action seeks the return of a minor child, K.P.C.A., to Colombia pursuant to the Hague Convention on the Civil Aspects of International Child Abduction (herein the "Hague Convention" or "Convention") and the International Child Abduction Remedies Act (22 U.S.C. § 9001 et. seq., hereinafter "ICARA"). K.P.C.A. was born in the United States to Petitioner and Respondent in 2010. K.P.C.A. resided primarily in the United States until 2015 and spent

Page 1 of 21

approximately one (1) year with Respondent in France during this period. On or about October 27, 2014, Petitioner returned to his home country of Colombia, and Respondent followed with K.P.C.A. sometime in the calendar year 2015. K.P.C.A. spent the next six (6) years of his life residing exclusively in Colombia with both Parties.

In May of 2021, when K.P.C.A. was ten (10) years old, Respondent informed Petitioner of her desire to take K.P.C.A. on a brief visit to the United States lasting approximately three (3) weeks. Pursuant to Colombian law, Petitioner executed a document authorizing this trip departing on May 28, 2021 and returning on June 17, 2021. Before their scheduled return date, however, Respondent informed Petitioner that she had no intention of returning to Colombia. Respondent and the minor child did not return to Colombia on June 17, 2021.

On or about December 13, 2021, Petitioner submitted an application to the Colombia Central Authority seeking return of the child pursuant to the Hague Convention. After delays in communication between the Colombia Central Authority and the United States Department of State, Petitioner filed the present action on or about June 9, 2022.

## II.  ARGUMENT AND CITATION TO AUTHORITY

A case arising under the Hague Convention demands a limited inquiry into only the question of whether a minor child must be returned to his country of habitual residence. First, the Petitioner bears the burden of proving, by a preponderance of the evidence, a prima facie case for return of the child. Once this is satisfied, the burden shifts to the Respondent to show that one of the enumerated affirmative defenses justifies a decision to not return the child. Because Petitioner can make out a prima facie case for return of K.P.C.A. and none of the affirmative defenses apply, this Court should order the immediate return of K.P.C.A. to Colombia.

### A.  Prima Facie Case

The prima facie case for return of the child is comprised of three parts. The Petitioner must show that (1) the child was a habitual resident of another country, (2) the Petitioner had valid custody rights under the laws of the country from which the child was removed, and (3) the Petitioner was actually exercising or would have been exercising his custodial rights at the time of removal or retention.

First, a court must determine the country "in which the child was habitually resident immediately before the removal or retention." Hague Convention Art. 3(a). The Convention itself does not define "habitually resident." The United

States Supreme Court has held that this is a fact-specific inquiry, and that "a child's habitual residence depends on the specific circumstances of the particular case." *Monaski v. Taglieri*, 140S.Ct. 719, 727 (2020). Generally speaking, however, "a child habitually resides where the child has become 'acclimatiz[ed]' to her surroundings." *Id.* at 724 (alteration in original). This inquiry also looks closely to the subjective intent of the parties regarding the minor child's habitual residence. *Calixto v. Lesmes*, 909 F.3d 1079, 1084 (11th Cir. 2018). In the Eleventh Circuit, "the 'unilateral intent of a single parent' will not suffice to change a child's habitual residence." *Id.* (citing *Redmond v. Redmond*, 724 F.3d 729, 745 (7th Cir. 2013).

Second, a person wrongfully removes or retains a child when the removal or retention "is in breach of rights of custody attributed to a person . . . under the law of the State in which the child was habitually resident." Hague Convention Art. 3(a). Here, courts must look to the law of the country from which the minor child was removed to determine whether the parent or guardian enjoyed custodial rights rather than to the law of the nation to which the child was taken. *Id.* Even where a parent does not have sole or primary custody of a child, "the violation of a *single* custody right suffices to make the removal of a child wrongful." *Furnes v. Reeves*, 362 F.3d 702, 714 (11th Cir. 2004) (emphasis in original) (holding that, although

the left-behind parent did not have authority to determine where the child could live *within* Norway, he still had the right to object to the child living *outside* Norway).

Third, removal or retention of a child from his country of habitual residence is only wrongful if "at the time of removal or retention, those [custody] rights were actually exercised . . . or would have been so exercised but for the removal or retention." Hague Convention Art. 3(b). This requirement bars return actions brought by parents who have abandoned their children. *Friedrich v. Friedrich*, 78 F.3d 1060, 1066 (6th Cir. 1996) (holding that "if a person has valid custody rights to a child under the law of the country of the child's habitual residence, that person cannot fail to 'exercise' those custody rights under the Hague Convention short of acts that constitute clear and unequivocal abandonment of the child").

Petitioner satisfies all three requirements to make out a prima facie case for the return of K.P.C.A. To begin, there can be no doubt that the six years K.P.C.A. spent in Colombia between the ages of four and ten were sufficient to acclimatize him to his surroundings. Evidence produced at the Final Hearing will show that the child was enrolled in the same tri-lingual school for the entire time he lived in Colombia from Kindergarten to Fifth Grade. The child built significant familial and social bonds in Colombia, participated in soccer and other activities, and had

limited, short-term visits to the United States. The fact that the Parties lived together in Colombia for this period of time with the minor child shows that, at one point, they agreed that K.P.C.A. should reside with both parents in Colombia indefinitely. Moreover, the travel authorization form that Petitioner executed provides a clear statement of his understanding that K.P.C.A. would return to Colombia following a three-week trip to the United States. Each of these factors indicates that, on June 9, 2021, Colombia was the country of habitual residence for K.P.C.A.

Next, Colombian law presumptively grants custodial rights to both of a child's biological parents. Law 57 of 1887 of the Colombian Civil Code, Article 288 (attached hereto as Exhibit "A") vests parental authority in both parents over their non-emancipated children. As it appears in the Colombian Civil Code, parental authority encompasses both the rights and responsibilities of the parents to care for their natural children. Because K.P.C.A. is the natural child of Petitioner, Colombian law vests Petitioner with custodial rights.

Finally, Petitioner was exercising his custodial rights and would have continued to do so but for Respondent's wrongful retention of K.P.C.A. in the United States. As previously stated, the Parties and the child lived together under one roof in Colombia for six years, during which Petitioner played an active role

in K.P.C.A.'s life. Further, as evidenced by the aforementioned travel authorization form, Petitioner expected that Respondent and K.P.C.A. would return to Colombia on or before June 17, 2021, whereupon they would continue to reside indefinitely in Colombia. This is not a case in which Petitioner abandoned the minor child and did not actually exercise his custodial rights. Therefore, Petitioner can establish a prima facie case for the return of K.P.C.A. to Colombia.

B.  *Affirmative Defenses*

Upon establishment of Petitioner's prima facie case for return, the Hague Convention permits the Respondent to raise five (5) affirmative defenses. In the Eleventh Circuit, these defenses are "construed narrowly so as to prevent them from swallowing the rule and rendering the Convention a dead letter." *Berenguela-Alvarado v. Castanos*, 950 F.3d 1352, 1358–59 (11th Cir. 2020) (internal quotes and citation omitted). Respondent has raised all five affirmative defenses. Each will be addressed in turn.

i.  *The Well-Settled Defense*

The first affirmative defense is known as the "well-settled" defense. Hague Convention Art. 12. The well-settled defense requires the Respondent to show that the Petitioner has failed to bring his claim within one year of the wrongful removal or retention *and* "that the child is now settled in its new environment." *Id.* The

clock begins on the day that the child is wrongfully retained in the new country and stops when the Return Action is filed. *Romero v. Bahamonde*, 857 Fed. App'x 576, 584 (11th Cir. 2021). Where the retention involves a travel consent letter, the left-behind parent has no recourse to demand the return of a child until the abducting parent actually retains the child beyond the anticipated return date. *Calixto*, 909 F.3d at 1087 (finding that the Colombian left-behind parent who signed a travel consent letter was forced to wait an entire year before filing an application with the Central Authority).

Here, Petitioner signed a travel consent letter authorizing Respondent to travel internationally with K.P.C.A. until June 17, 2021. Because he consented to a three-week vacation, Petitioner cannot claim that Respondent wrongfully removed K.P.C.A. from Colombia until June 18, 2021, once the Respondent failed to return K.P.C.A. to Colombia. It is undisputed that Petitioner filed his Petition on June 9, 2022, less than one year after Respondent failed to return the child to Colombia. Because Petitioner initiated the Return Action within a year, Respondent is prohibited from raising the well-settled defense.

ii.  *The Mature Child Objection Defense*

The second affirmative defense is known as the "mature child objection" defense. This defense requires that Respondent show, by a preponderance of the

evidence, "that the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of its views." Hague Convention Art. 13. Even if a court finds that a sufficiently mature child objects to being returned, the decision to return the child merely falls to the court's discretion. *Id.* In analyzing this question, courts look to "(1) whether the child was sufficiently mature; (2) whether the child has a *particularized objection* to being repatriated; and (3) whether the objection is the product of undue influence." *Romero*, 857 Fed. App'x at 583 (emphasis added).

First, a finding that the child is sufficiently mature under the meaning of the Hague Convention does not rest exclusively on the child's age. *Id.* Rather, the child must be sufficiently mature to offer nuanced opinions on the subject of where to reside. *Id*; *De Jesus Joya Rubio v. Alvarez*, 526 F. Supp. 3d 1186, 1205 (S.D. Fla. 2021) (relying heavily upon the expert opinion of the child's psychologist who found the child to be capable of expressing nuanced opinions about both parents and of enumerating specific reasons he objected to the return).

Second, this defense requires the child to articulate a particular objection to returning to his country of habitual residence. *Romero*, 857 Fed. App'x at 583. Specifically, the child must voice an opinion "affirmatively objecting to returning to one country—when living in that country would be unacceptable." *Rodriguez v.*

*Yanez*, 817 F.3d 466, 477 (5th Cir. 2016). It is essential to note, however, that a "child's objection is different from a child's wishes, as would be considered in a custody hearing." *De Jesus Joya Rubio*, 526 F. Supp. 3d at 1205 As such, the child at issue must lodge a specific objection based on the child's actual, personal knowledge. *Id.*

Third, the Court must find that the opinion voiced by the child is the child's alone and not the product of undue influence. *Romero*, 857 Fed. App'x at 583. In determining this factor, "courts place great weight on whether the objection is based on the child's firsthand experiences." *Id.* (citing *Colon v. Montufar*, 470 F. Supp. 3d 1280, 1298 (S.D. Fla. 2020). In *Romero*, the child in question voiced objection to being returned to Chile based on her father's repeated verbal and physical assaults on her mother and an incident in which the left-behind parent cut the child and the abducting parent off financially and allowed them to live on the street without food or support. *Romero*, 857 Fed. App'x at 583–84.

Here, Respondent asserts that K.P.C.A. "objects to being returned to Colombia due to his fear of crime and the increased acts of terrorism in Colombia." Additionally, Respondent asserts that K.P.C.A. "is fearful of being alone with his father." However, approximately one week after responding to Petitioner's Petition in this Court, Respondent initiated a custody action in the

Superior Court of Gwinnett County and, in support of her claim, filed an affidavit of election signed by K.P.C.A. The affidavit of K.P.C.A. is attached hereto as Exhibit "B." The child's affidavit reads, in relevant part: "Although I love both of my parents, I desire to live on a primary basis with my Mother. . . . and to visit with my Father on a regular and frequent basis." Respondent's factual assertions, therefore, are inconsistent between the two courts. Respondent claims that a child who fears being alone with his father voluntarily signed a document asking a court to award his father "regular and frequent" visitation. If, as K.P.C.A. averred in his affidavit, he merely desires to live primarily with his mother, the Hague Convention mandates that this Court order his return to Colombia.

Nonetheless, this Court must determine at the final hearing whether the concerns raised in Respondent's Answer truly reflect the objections of K.P.C.A. or merely echo the concerns of the Respondent. It is essential to note once again that Petitioner was permitted to speak with K.P.C.A. up until October 2021 when the Respondent cut off contact. Since that time, Respondent has had sole access to K.P.C.A. and has used this opportunity to influence the child's outlook on the situation. In her answer, Respondent raises general concerns regarding the rate of crime and "terrorism" in Colombia, facts that seem to echo the feelings of a concerned mother, rather than those of a terrified child. Because these

justifications are not sufficiently particularized and do not appear to come from the child's experiences, Respondent has not met the standard for a mature child objection.

### iii. The Consent or Acquiescence Defense

The third affirmative defense is the "consent" defense. Article 13 states that the Court is not bound to return a child where the left-behind parent "consented to or subsequently acquiesced in the removal or retention." Hague Convention Art. 13(a). Respondent bears the burden of proving, by a preponderance of the evidence, that Petitioner affirmatively consented or acquiesced to K.P.C.A. permanently residing in the United States. *Berenguela-Alvarado*, 950 F.3d at 1360 (reversing and remanding a district court opinion which placed the burden on the petitioner to show that her consent was the product of duress). Critically, however, the doctrines of consent and acquiescence are analytically distinct from one another. *Darín v. Olivero -Huffman*, 746 F.3d 1, 14 (1st Cir. 2014). "The consent defense involves the petitioner's conduct prior to the contested removal or retention, while acquiescence addresses whether the petitioner subsequently agreed to or accepted the removal or retention."*Baxter v. Baxter*, 423 F.3d 363, 371 (3rd Cir. 2005). While prior consent is ordinarily a more freeform inquiry into the subjective intent of the parents before removal or retention, subsequent

acquiescence requires more formality to show such intent. *Darín*, 746 F.3d at 15–16 (listing "testimony in a judicial proceeding, a convincing written renunciation of rights, or a consistent attitude over a significant period of time" as plausible methods of subsequent acquiescence).

In the case at bar, Respondent cannot point to the travel authorization form that Petitioner signed to satisfy the Hague Convention's consent defense because Petitioner conditioned this consent on the child's return no later than June 17, 2021. Therefore, it is undisputed that the Petitioner did not consent to the child permanently residing in the United States. As such, Respondent must show that Petitioner acquiesced to the child's retention in the United States on a permanent basis, despite Petitioner's consistent protestation of the same. Respondent claims, and Petitioner vehemently denies, that Petitioner acquiesced to the child remaining in the United States during a FaceTime call in October 2021. Although Petitioner affirms that such a call did take place, and that he was permitted to speak with K.P.C.A. with the Respondent present, Petitioner did not give his consent to the child's permanent relocation to the United States. Moreover, even if Petitioner voiced some resignation to K.P.C.A. during the call, such an oral statement does not rise to the level of formality contemplated by the First Circuit in *Darín*. Petitioner has given no testimony reflecting unequivocal acquiescence, and he has

not memorialized his alleged acquiescence in any writing. To the contrary,

Petitioner immediately began seeking legal remedies to Respondent's actions

shortly after the October 2021 FaceTime call when he first realized that

Respondent would not willingly return K.P.C.A. to Colombia. This is not a case in

which Petitioner changed his mind or revoked his consent at a later date; Petitioner

has consistently sought the return of his son to Colombia.

### iv. *The Grave Risk of Harm Defense*

The fourth affirmative defense is the "grave risk of harm" defense. The

Hague Convention provides that the Court is not bound to return a child where the

Respondent can show by clear and convincing evidence that "there is a grave risk

that his or her return would expose the child to physical or psychological harm or

otherwise place the child in an intolerable situation." Hague Convention Art.

13(b). Respondent asserts that K.P.C.A. faces a grave risk of harm if returned to

Colombia. Under the grave risk of harm defense, Respondent must show, *by clear*

*and convincing evidence*, that the child faces a grave risk of harm if returned to his

country of habitual residence. *Romero*, 857 Fed. App'x at 586.

A grave risk of harm under the Hague Convention presents a significantly

higher burden than a "best interests" analysis in custody cases. Courts identify a

grave risk of harm when, for example, "returning the child to a zone of war,

famine, or disease" or "in cases of serious abuse or neglect, or extraordinary

emotional dependence, when the court in the country of habitual residence, for

whatever reason, may be incapable or unwilling to give the child adequate

protection." *Friedrich*, 78 F.3d at 1069 (refusing to accept the grave risk of harm

defense where the child would merely have trouble re-adjusting to life in Germany

if returned). *Cf. Romero*, 857 Fed. App'x at 586 (finding a grave risk of harm

where the left-behind parent beat the abducting parent so severely that she

miscarried and broke several bones); *Gomez v. Fuenmayor*, 812 F.3d 1005, 1013

(11th Cir. 2016) (finding a grave risk of harm where the left-behind parent had

repeatedly threatened to kill the abducting parent and had threatened the child on

at least one occasion); *Taylor v. Taylor*, 502 Fed. App'x 854, 857 (11th Cir. 2012)

(finding a grave risk of harm where the left-behind parent and an anonymous third

party had repeatedly threatened to kill the abducting parent).

By comparison, Respondent here fails to allege any threats of violence or

actual physical or verbal abuse on the part of Petitioner. Instead, Respondent

points to the existence of robbery, extortion, homicide, and organized crime in

Colombia, all of which are also present in the United States. Further, none of the

acts in Respondent's parade of horribles has been threatened against K.P.C.A.,

much less at the hands of the Petitioner. Both Respondent and the child lived in

Colombia for six years without incident. Respondent separately alleges that Petitioner "is a convicted felon and has a history of drug and/or alcohol abuse." Petitioner is indeed a convicted felon; he was convicted in 2011 for sexual battery and aggravated assault.[1] Petitioner was sentenced seven (7) years and was released after four (4) years. Upon Petitioner's release, he was deported to Colombia, and the Respondent and minor child moved there in 2015 to join him. Prior to that. in 2005, the Petitioner was convicted of trafficking marijuana for which he served two years. Petitioner is prepared to show this Court that since his release in 2014, he has had no arrests or convictions. The Petitioner's Colombia criminal background check is attached hereto as Exhibit "C." None of the allegations set forth in Respondent's enumeration of affirmative defenses provide support for the claim that K.P.C.A. faces a grave risk of harm if returned to Colombia.

   v.  *The Inhuman Conditions Defense*

The fifth affirmative defense is known as the "inhuman conditions" defense. Article 20 of the Hague Convention provides that a court may refuse to return a child "if this would not be permitted by the fundamental principles of the requested State relating to the protection of human rights and fundamental

---

[1] After a mistrial, the Petitioner agreed to an Alford plea wherein he maintained his innocence. Further, the Respondent testified on Petitioner's behalf regarding his innocence.

freedoms." Hague Convention Art. 20. "Article 20 is a seldom-cited and somewhat obscure provision . . . meant to be restrictively interpreted and applied . . . on the rare occasion that return of a child would utterly shock the conscience of the court or offend all notions of due process." *Sewald v. Reisinger*, 2009 U.S. Dist. LEXIS 3758 at *8 (M.D. Fla. January 20, 2009) (internal quotes and citation omitted). Since the Hague Convention was ratified by Congress in 1988, there is no recorded appellate case in the United States wherein a trial court refused to return a child to her country of habitual residence pursuant to Article 20.

Here, Respondent asks the Court to create disastrous precedent by ruling that Colombia's alleged higher-than-average crime rate makes it deficient in protecting human rights. Because Colombia provides a forum to make a just determination of child custody between the Parties, this Court should reject Respondent's assertion that Article 20 allows this Court to refrain from returning K.P.C.A. to Colombia.

## III.  CONCLUSION

Petitioner can establish a prima facie case for the return of a child under the Hague Convention, and Respondent cannot support any of the affirmative defenses that permit this Court to refuse Petitioner's request for relief. This Court should order the immediate return of K.P.C.A. to Colombia.

Respectfully submitted, this 17th day of August 2022,


PATRICIA D. SHEWMAKER
Georgia Bar No. 455069
Counsel for Petitioner
**SHEWMAKER & SHEWMAKER, LLC**
50 Technology Way Pkwy S
Peachtree Corners, Georgia 30092
Office 770-939-1939
pshewmaker@shewmakerlaw.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE THE APPLICATION OF | * | |
| | * | |
| JUAN DAVID CARDONA RUIZ, | * | |
| Petitioner, | * | Civil Action File |
| | * | No.: 1:22-CV-02293-SDG |
| v. | * | |
| | * | |
| JERISSE LOUISE AGUEY ZINSOU, | * | |
| Respondent. | * | |
| | * | |

## **CERTIFICATE OF SERVICE**

This is to certify that I have this day served opposing counsel in the

foregoing matter with a copy of the within and foregoing CERTIFICATE OF

DISCOVERY by electronic service in accordance with Local Rules:

Tamar Faulhaber, Esq.
Faulhaber Family Law, LLC
3180 North Point Parkway, Suite 103
Alpharetta, Georgia 30005
tamar@tfamilylaw.com

PATRICIA D. SHEWMAKER
Georgia Bar No.: 455069
Counsel for Petitioner

Page 19 of 21

**SHEWMAKER & SHEWMAKER, LLC**
50 Technology Pkwy S
Peachtree Corners, Georgia 30092
770-939-1939 phone
pshewmaker@shewmakerlaw.com

## <u>CERTIFICATE OF FONT AND POINT SELECTION</u>

I hereby certify that the foregoing was prepared in Times New Roman font

in 14 point type in compliance with Local Rule 5.1(C).

PATRICIA D. SHEWMAKER
Georgia Bar No. 455069
Counsel for Petitioner
**SHEWMAKER & SHEWMAKER, LLC**
50 Technology Way Pkwy S
Peachtree Corners, Georgia 30092
Office 770-939-1939
pshewmaker@shewmakerlaw.com




**BIENESTAR FAMILIAR**

# COLOMBIAN LEGISLATION ON PARENTAL AUTHORITY, CUSTODY RIGHTS AND ALIMONY[1]

## COLOMBIAN LEGISLATION ON PARENTAL AUTHORITY

### Ley 57 de 1887 – Colombian Civil Code

**Article 288. <Definition of Parental Authority >.** Parental authority is the set of rights that the law recognizes for parents regarding their non-emancipated children, to facilitate compliance with the duties that their role imposes on them.

Together, the parents are responsible for exercising parental authority over their children. In the absence of one of the parents, the other will exercise it.

Non-emancipated children are children of the family, and the father or mother in relation to them, father or mother.

**Article 299. <Cease of administration and usufruct>.** Both the administration and the usufruct cease when the parental authority is terminated and when the parents who exercise it are found liable for fraud or serious guilt in the performance of the former.

Guilt is presumed when the assets are considerably reduced or the liability is increased without a fair cause.

**Article 305. < Litigation against whoever exercises parental authority>.** Whenever the child has to litigate against the person exercising parental authority, a guardian will be given for the litigation, who will preferably be a family defense attorney when he or she exists in the respective municipality; and if he or she acts as a part, the authorization of the judge will be necessary.

**Article 306. <Judicial representation of the child >.** The legal representation of the child corresponds to either parent.

The child can only appear in court as a part, authorized or represented by one of his parents. If both deny their consent to the child or if they are unable to provide it or if they authorize

---

[1] This text is a compilation of the relevant articles regarding parental authority, custody rights and alimony. For more information go directly to the cited legislation.

**EXHIBIT**

*A*

E-FILED IN OFFICE - IT
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA
**22-A-05896-7**
7/12/2022 9:02 AM
TIANA P. GARNER, CLERK

## IN THE SUPERIOR COURT OF GWINNETT COUNTY
### STATE OF GEORGIA

JERISSE LOUISE AGUEY ZINSOU,                    )
                                                )
     Plaintiff,                                )
                                                )
    v.                                        )    **CIVIL ACTION FILE**
                                                )    NO: 22-A-05896-7
                                                )
JUAN DAVID CARDONA RUIZ,                        )
                                                )
     Defendant.                                )
                                                )

## AFFIDAVIT OF ELECTION OF MINOR CHILD, KAYDEN PIERRE CARDONA

Personally appeared before the undersigned duly authorized to administer oaths in the State of Georgia, KAYDEN PIERRE CARDONA, who after being duly sworn deposes and states the following:

1.

My name is Kayden Pierre Cardona. I am the son of Jerisse Louise Aguey Zinsou and Juan David Cardona Ruiz. I was born in 2010 and am currently twelve (12) years of age.

2.

I am aware of the laws of Georgia and understand that as a twelve (12) year old child of separated parents, I am permitted to select which parent I would like to live.

3.

I make this Affidavit voluntarily, under no legal disability, and based upon my personal knowledge.



FAULHABER FAMILY LAW, LLC
3180 NORTH POINT PARKWAY
BUILDING 100, SUITE 103
ALPHARETTA, GEORGIA 30005

*Affidavit of Election*
J. Aguey Zinsou v. J. Cardona Ruiz
Case No.
PAGE 1 OF 3



EXHIBIT
B

4.

I am aware of the current custody dispute between my parents Jerisse Louise Aguey Zinsou and Juan David Cardona Ruiz.

5.

Although I love both of my parents, I desire to live on a primary basis with my Mother.

6.

I am confident in my decision to live on a primary and permanent basis with my Mother, and to visit with my Father on a regular and frequent basis.

7.

I make this Affidavit so as to confirm my desire to live in the primary physical custody of my Mother as soon as possible following the execution of this Affidavit, and on a permanent basis. I am aware that this Affidavit will be used by my Mother in this case.

8.

I have voluntarily asked my Mother to have her attorney prepare this Affidavit. I hereby affirm that I have read and that I fully understand all paragraphs of this Affidavit. I hereby affirm that I have made this Affidavit under oath and that the statements contained herein are true and accurate. I am of sound mind and have made this election voluntarily and not because of any pressure or duress, or because of any problems made known to me by either of my parents.

FURTHER AFFIANT SAYETH NOT.



FAULHABER FAMILY LAW, LLC
3180 NORTH POINT PARKWAY
BUILDING 100, SUITE 103
ALPHARETTA, GEORGIA 30005

*Affidavit of Election*
J. Aguey Zinsou v. J. Cardona Ruiz
Case No.
PAGE 2 OF 3

_Kayden Pierre Cardona_
KAYDEN PIERRE CARDONA

Sworn to and subscribed before me this
the ___7___ day of July, 2022.

_Angaline Karim_
Notary Public

My commission expires: 10/20/2023

ANGALINIE KARIM
NOTARY PUBLIC
Gwinnett County
State of Georgia
My Comm. Expires Oct. 20, 2023

FAULHABER FAMILY LAW, LLC
3180 NORTH POINT PARKWAY
BUILDING 100, SUITE 103
ALPHARETTA, GEORGIA 30005

*Affidavit of Election*
J. Aguey Zinsou v. J. Cardona Ruiz
Case No.
PAGE 3 OF 3



**PROCURADURIA**
**GENERAL DE LA NACION**



WEB
15:43:15
Page 1 of 01

# CRIMINAL RECORD

## ORDINARY CERTIFICATE
## No. 202520741

Bogotá DC, August 08, 2022

The ATTORNEY GENERAL'S OFFICE certifies that after consulting the Sanctions and Disabilities Registry Information System (SIRI), Mr. JUAN DAVID CARDONA RUIZ, identified with Citizenship ID number 1125292576:

DOES NOT RECORD CURRENT SANCTIONS OR DISABILITIES

**WARNING:** The criminal record should contain the annotations of the sanctions or disabilities in force. In the case of appointment or possession in roles requiring absence of records for their performance, all the annotations appearing in the registry will be certified. (Article 238 Law 1952 of 2019)

**NOTE:** The disciplinary record certificate contains the annotations and disqualifications generated by criminal and disciplinary sanctions, disqualifications derived from contractual relations with the state, rulings with fiscal responsibility, decisions of loss of investiture and of the sentences expressed against servants, former public servants and individuals who perform public functions in the exercise of the action of repetition or appeal in guarantee. **This document has effects to access the public sector, in the terms established by law or other current provisions.** Only the reports made by the Colombian national authorities are included in the background record. In case of appointment or signing of contracts with the state, it is the Entity's responsibility to validate the information submitted by the applicant on the website: http://www.procuraduria.gov.co/portal/antecedentes.html

CARLOS ARTURO ARBOLEDA MONTOYA
Head of Citizen Relations Division

**ATTENTION:**
THIS CERTIFICATE CONSISTS OF 01 SHEET, IT IS ONLY VALID IN ITS ENTIRETY. VERIFY THAT THE CERTIFICATE NUMBER IS THE SAME ON ALL SHEETS.

Citizen Relations Division.
Toll-free number 018000910315; quejas@procuraduria.gov.co
Carrera 5 No. 15 - 60 Piso 1; Pbx 5878750 ext. 13170; Bogotá D.C.
www.procuraduria.gov.co



EXHIBIT

C

ALL-STATE LEGAL®