**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| JUAN DAVID CARDONA RUIZ,<br><br>    Petitioner,<br><br>               v.<br><br>JERISSE LOUISE AGUEY ZINSOU,<br><br>    Respondent. | Civil Action No.<br>1:22-cv-02293-SDG |

**OPINION AND ORDER**

This matter is before the Court on Petitioner's Complaint and Verified Petition for Return of a Child (the Petition) pursuant to Article 3 of the Hague Convention (the Convention). The Court held an evidentiary hearing on the Petition on August 24, 2022. After careful consideration of the evidence, the Court **GRANTS** the Petition and **ORDERS** the return of the child, K.P.C.A., to Colombia for custody proceedings. In accordance with Article 19 of the Convention, this order is not a determination of the merits of any custody issues.

**I.    Background**

Jerisse Louise Aguey Zinsou and Juan David Cardona Ruiz are the parents of a minor child, K.P.C.A. The child was born in the United States, where he lived for the first five years of his life, and where, at the time, both parents resided. In 2014, Petitioner was deported to Colombia. Sometime in 2015, Respondent moved

with K.P.C.A. to Colombia to live with the Petitioner. Though Petitioner and Respondent never married, the family lived together in Medellín, Colombia from sometime in 2015 until May 28, 2021.

Colombian law requires that, before a child leaves Colombia with one parent or a third party, the parent remaining in Colombia sign a "Permiso Para Salir Del Pais." This document authorizes the child to be out of the country for the dates specified in the document. Petitioner signed and notarized a Permiso Para Salir Del Pais authorizing K.P.C.A. to travel to the United States from May 28, 2021 through June 17, 2021. At the point that Petitioner signed the travel authorization, it was clear that the trip was to be no more than three-weeks. However, at some point between May 28 and June 17, Respondent decided not to return as planned. She cancelled her ticket and stayed in the United States with K.P.C.A. Over the course of the next few months, Petitioner and Respondent were in communication about when Respondent would return K.P.C.A. to Colombia. In October 2021, it became clear to Petitioner that Respondent had no intentions of ever returning. Petitioner found a lawyer, and in early December 2021, filed a Columbia Central Authority Application under the Convention for the return of the child. The instant petition was filed on June 9, 2022 pursuant to Article 3 of the Convention.

The Convention seeks "to protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence." *Hanley v. Roy*, 485 F.3d 641, 644 (11th Cir. 2007). "The [C]onvention is intended as a rapid remedy for the left-behind parent to return to the status quo before the wrongful removal or retention." *Ruiz v. Tenorio*, 392 F.3d 1247, 1250 (11th Cir. 2004).

"The Convention and [the implementing legislation] empower courts in the United States to determine only rights under the Convention and not the merits of any underlying child custody claims." *Baran v. Beaty*, 526 F.3d 1340, 1344 (11th Cir. 2008) (quoting 22 U.S.C. § 9001(b)(4) (bracket in original)). Thus, "[a] court's inquiry is limited to the merits of the abduction claim and not the merits of the underlying custody battle." *Ruiz*, 392 F.3d at 1250 (citation omitted). *See also Seaman v. Peterson*, 766 F.3d 1252, 1257 (11th Cir. 2014) ("[T]he central purpose of the Convention and [the implementing legislation] in the case of an abducted child is for the court to decide as a gatekeeper which of the contracting states is the proper forum in which the issue of custody should be decided."); *Calixto v. Lesmes*, 909 F.3d 1079, 1083 (11th Cir. 2018) (same).

## II. Findings of Fact

The Court finds that the retention of K.P.C.A. in the United States as of June 18, 2021 was wrongful. It further finds that Respondent did not meet her burden of proving an affirmative defense under the Convention. The Court will first address the prima facie elements under Article 3 and will then address each affirmative defense raised by Respondent.

### A. The Petitioner established a prima facie case of wrongful retention.

Article 3 of the Convention on the Civil Aspects of International Child Abduction governs the wrongful removal and retention of children. It states:

> The removal or the retention of a child is to be considered wrongful where:
>
> a) it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and
>
> b) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

Because these elements require a temporal analysis, the Court must first determine the relevant date of retention.

### 1.     Retention was wrongful as of June 18, 2021.

In the Eleventh Circuit, the date of wrongful retention is measured from the date the custodial parent informs the non-custodial parent that she will not be returning to the state of habitual residence. *Palencia v. Perez*, 921 F.3d 1333, 1342 (11th Cir. 2019). In *Palencia*, the court held that the need for such a rule is "even stronger where—as here—the custodial parent makes affirmative representations regarding the date of the child's return and then fails to act in accordance with them." *Id*. "'[W]rongful retention' occurs when one parent, having taken the child to a different Contracting State with permission of the other parent, fails to return the child to the first Contracting State when required." *See generally Taveras v. Morales,* 22 F. Supp. 3d 219, 231–32 (S.D.N.Y. 2014); *see also Redmond v. Redmond,* 724 F.3d 729, 738 n.5 (7th Cir. 2013) ("Wrongful retentions typically occur when a parent takes a child abroad promising to return with the child and then reneges on that promise.").

The parties do not dispute that, when Respondent left with K.P.C.A. on May 28, 2021, it was the intent of both Petitioner and Respondent that Respondent and K.P.C.A. would return to Colombia by June 17, 2021. In fact, Petitioner and Respondent executed a travel authorization prior to their departure authorizing K.P.C.A. to travel from May 28, 2021 to June 17, 2021. That form explicitly gave

permission for K.P.C.A. to be out of Colombia for a finite period and constitutes an explicit representation by Respondent of the date of K.P.C.A.'s return. Petitioner testified that he signed this form because Respondent wanted to take K.P.C.A. on a trip to the United States to visit friends and take care of residual issues regarding her father's estate. Since Petitioner cannot legally enter the United States, it was common for him to authorize Respondent and K.P.C.A. to travel without him.

However, Respondent and K.P.C.A. did not return to Colombia on June 17, 2021. It is unclear when Respondent communicated unequivocally to Petitioner that she and K.P.C.A. would not return as planned, but the Court finds that, by June 18, when the child was not returned to Colombia in accordance with the travel authorization, there was no longer any question about whether K.P.C.A. would be in Colombia on the agreed upon date—he was not. After Respondent cancelled her return ticket, she did not identify a new date of return. Petitioner, who believed this extension would be brief, credibly testified that while he did not consent to this extension he had no choice but to defer to Respondent's decision due to his immigration status. Text messages between Petitioner and Respondent demonstrate that Petitioner was confused and upset when Respondent continuously postponed their return and consistently asked her when she planned

to return. The Court finds that, since Petitioner did not unequivocally consent to K.P.C.A. remaining in the United States beyond the travel authorization dates, retention was wrongful as of June 18, 2021.

### 2. K.P.C.A.'s habitual residence was Colombia immediately prior to the wrongful retention.

A child's habitual residence depends on the totality of the circumstances specific to the case and not on categorical requirements. *Monaski v. Taglieri*, 140 S.Ct. 719 (2020). Neither party disputes that Colombia was K.P.C.A.'s habitual residence prior to June 18, 2021. K.P.C.A. spent six years, from the ages of four or five until he was three weeks shy of his eleventh birthday, living with both parties in Colombia. From 2015 to May 2021, the three lived together under the same roof. He attended school in Colombia from kindergarten to fifth grade, where he developed many social bonds and participated in academic activities. He has family in Colombia with whom he would visit regularly and spend holidays. He also participated in activities such as soccer. The Court finds that Colombia was K.P.C.A.'s habitual residence immediately prior to his wrongful retention.

### 3. Petitioner had custody rights prior to the wrongful retention.

To determine whether a party has custodial rights, courts look to the laws of the country where the child was a habitual resident immediately prior to the

wrongful retention—here, Colombia. Accordingly, Petitioner's custodial rights are determined pursuant to Colombian law.

The parties agree that Petitioner had custodial rights to K.P.C.A. under Colombian law. There is no dispute that Petitioner is K.P.C.A.'s biological father and Colombian law presumptively grants custodial rights to both of a child's biological parents, regardless of their marital status. Petitioner is named as the father on K.P.C.A.'s birth certificate, which is signed by Respondent. Additionally, Respondent testified that she moved to Colombia in the first instance so that K.P.C.A. could live with his father. The Court finds that Petitioner had custodial rights to K.P.C.A. prior to his wrongful retention.

### 4. Petitioner was exercising his custodial rights prior to the wrongful retention.

There is no question that Petitioner was actually exercising his custodial rights immediately prior to the wrongful retention. Both parties and K.P.C.A. testified that they all lived together prior to leaving for the United States, and that Petitioner played an active role in K.P.C.A.'s life by, for example, helping him with his schoolwork and taking him on outings. The parties do not dispute, and this Court finds, that Petitioner was exercising his custodial rights immediately prior to the wrongful retention.

In sum, Petitioner has satisfied his burden of establishing a prima facie case of wrongful retention under Article 3 of the Convention.

**B.  Respondent has failed to establish her affirmative defenses.**

Because this Court finds that Petitioner has met his prima facie burden, the burden shifts to Respondent to prove that an affirmative defense applies and that this Court should not order the return of K.P.C.A. Articles 12, 13, and 20 of the Convention contemplate five defenses to an international child abduction case: the mature-child-objection defense, the acquiescence or consent defense, the well-settled defense, the grave-risk-of-harm defense, and the inhumane-conditions defense. Based on the evidence presented during the trial, the Court finds that Respondent has failed to satisfy her burden with respect to each of these defenses.

**1.  The mature-child-objection defense**

Pursuant to Article 13 of the Convention, the Court may refuse to order the return of the child if it finds that the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of his views. While the Court has discretion to determine the applicability of this defense, there are three primary considerations:

>(1) whether the child is sufficiently mature;
>
>(2) whether the child has a particularized objection to being repatriated; and

> (3) whether the objection is the product of undue influence.

*Romero v. Bahamonde,* 857 Fed. App'x 576, 584 (11th Cir. 2021). Importantly, this defense requires that the child express more than a mere preference—he must be able to articulate a particularized objection to returning to his country of habitual residence. *Id.*

The Court finds that K.P.C.A. qualifies as a mature child. K.P.C.A. is now twelve years old. During the hearing, K.P.C.A. testified under oath, in chambers, with both parties' attorneys present, and each was allowed to ask K.P.C.A. questions. The Court then followed up with additional questions. The Court was impressed with K.P.C.A. on many fronts. He was articulate, thoughtful, intelligent, and aware. He understood the reason he was being asked questions as well as the difference between expressing a parental preference as opposed to a country preference. The Court finds that he was certainly capable of expressing a particularized objection to returning to Colombia if he had one.

Petitioner and Respondent both testified that, since October 2021, K.P.C.A. and the Petitioner have had very minimal contact. K.P.C.A. has been in the sole custody of his mother since May 28, 2021 and Respondent testified that K.P.C.A. and Petitioner's relationship has deteriorated since being in the United States. While the Court recognizes that this situation is ripe for undue influence, it does

not find any cause to believe that K.P.C.A.'s testimony was the product of undue influence.

Nevertheless, the Court finds that K.P.C.A. did not express a particularized objection to returning to Colombia. In July 2022, K.P.C.A. executed an affidavit in a related underlying custody proceeding in Gwinnett County Superior Court. That affidavit states that, while K.P.C.A. prefers to live primarily with his mother, he loves his father and would like to visit him on a "regular and frequent basis." Notably, during his testimony at the hearing K.P.C.A. affirmed the statements in his affidavit. He again expressed a preference to live with his mother but did not express a specific objection to returning to Colombia. In fact, he noted that there were things he liked about Colombia and disliked about the United States. When the Court asked K.P.C.A. whether he was expressing a parental preference or a country preference, he stated that while he somewhat preferred to live in the United States, he was expressing a parental preference. The Court therefore finds that K.P.C.A. did not articulate a particularized objection to returning to Colombia sufficient to meet the mature-child-objection defense. Accordingly, Respondent failed to meet her burden as to this affirmative defense.

### 2. The acquiescence or consent defense

Article 13(a) does not require the return of a child where a petitioner has "consented to or subsequently acquiesced in the removal or retention." Consent takes place prior to the wrongful retention and acquiescence develops after the wrongful retention occurs. *Darin v. Olivero-Huffman*, 746 F.3d 1 (1st Cir. 2014) (citing *Baxter v. Baxter*, 423 F.3d 363 (3d Cir. 2005)). Additionally, "acquiescence tends to require more formality than consent—e.g., testimony in a judicial proceeding, a convincing written renunciation of rights, or a consistent attitude over a significant period of time." *Id* at 16. "When attempting to characterize ambiguous conduct as a basis for inferred acquiescence, courts employ a pure subjective intent inquiry." *Id*. Additionally, the First Circuit at least takes unequal bargaining power into consideration when determining whether a party acquiesced. *Id* at 17. The Respondent bears the burden of proving, by a preponderance of the evidence, that Petitioner consented or acquiesced to the child permanently residing in the United States.

For the same reasons stated previously as to the Court's findings concerning wrongful retention, so too has Respondent failed to meet her burden concerning consent. Nor was there evidence presented of formal acquiescence, such as

testimony in a judicial proceeding or a convincing written renunciation of rights. Respondent instead presented evidence of, at best, ambiguous conduct.

When Respondent decided not to return on June 17, 2021, she did not provide a new definite date of return. Over the course of the next few months, Respondent testified that she became increasingly hesitant to return to Colombia as she did not feel secure in her relationship with Petitioner. Both parties testified that she did not intend to return with K.P.C.A. until she felt more confident in their future as a couple. The parties frequently communicated about the state of their relationship and made efforts to improve it. During this time, Petitioner continuously asked when they would be returning to Colombia and his text messages show that he was frustrated that Respondent had left with K.P.C.A. and would not commit to a return date. Respondent, though she would not provide a date, continued to suggest that she would be returning with K.P.C.A. The Court finds that Petitioner could not have acquiesced to K.P.C.A.'s permanent retention in the United States while Respondent was herself unsure if she planned to stay. The Court also finds that Petitioner understandably believed, based on Respondent's representations, that their return was imminent.

Respondent relies heavily on the fact that Petitioner withdrew K.P.C.A. from school in Colombia to suggest that he acquiesced to the child's move to the

United States. However, the Court finds that, when Respondent asked Petitioner to remove K.P.C.A. from school in Colombia, he refused to do so and ultimately, Respondent had to withdraw him. On July 29, 2021, Respondent informed Petitioner via text message that she would be looking for new schools for K.P.C.A. since, according to Respondent, more issues had arisen with her brother in the United States and it would be easier to have K.P.C.A. in school while she dealt with those issues. Petitioner responded, "I don't understand" and "What do you mean." Then, in the conversation immediately following that interaction, Petitioner discussed with Respondent the neighborhoods in Colombia where he was looking for a new apartment for the three of them to live. Later that same day, Respondent informed Petitioner that she was going to visit a school where she wanted to enroll K.P.C.A. and that this "doesn't mean that I want to be [in the United States] for ever [sic.]." The Court finds that these interactions, along with the communications that followed, do not show that Petitioner acquiesced to K.P.C.A.'s permanent stay in the United States. To the contrary, the Court finds that Petitioner objected to K.P.C.A. transferring schools in the first instance and any subsequent failure to object was based on both Respondent's statement that it would not be permanent and Petitioner's inability to force Respondent to do otherwise. It is worth noting that Petitioner had unequal bargaining power in his

interactions with Respondent while she was in the United States with the child because Petitioner is not authorized to enter the country, which the Court finds persuasive.

Respondent also relies on an October 2021 phone conversation between herself, Petitioner, and K.P.C.A. where Petitioner asked K.P.C.A. where he wanted to live. According to both parties, K.P.C.A. responded that he wished to live with his mother in the United States, to which Petitioner responded, "Okay, papi." According to Respondent, Petitioner then agreed to allow K.P.C.A. to remain in the United States and visit Colombia on breaks. Petitioner vehemently denies this and testified that, while he was not going to argue with his son on the phone, after this call he immediately contacted his cousin, a lawyer, to discuss what could be done to get K.P.C.A. back to Colombia. A month or so later, in early December 2021, Petitioner filed a Columbia Central Authority Application Under the Hague Convention for the return of the child. The Court finds that Petitioner's actions do not show a consistent attitude of acquiescence over a persistent period of time. Therefore, the Court finds that Respondent has not satisfied her burden of demonstrating that Petitioner acquiesced to K.P.C.A. remaining in the United States permanently.

### 3. The well-settled defense

Respondent raises the well-settled defense, but the Court finds that it is not available to her as a matter of law since Petitioner filed his Petition within one year of the wrongful retention. Article 12 of the Convention requires the return of the child where the removal/retention was wrongful and the proceeding was brought within a year of removal/retention. However, even where the proceedings have been commenced after the expiration of the one-year period, a child shall be returned unless it is demonstrated that the child is now settled in his new environment. Therefore, the well-settled defense is only applicable where a petition is brought *after* a year has passed since the wrongful removal/retention. As stated above, the Court finds that retention was wrongful as of June 18, 2021. Petitioner filed this Petition on June 9, 2022. Accordingly, the Petition was filed within a year and Respondent cannot rely on the well-settled defense.

### 4. The grave-risk-of-harm defense

Pursuant to Article 13(b) of the Convention, courts are not required to order a child to return where "there is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation." Respondent bears the burden of proving this defense by clear and convincing evidence. Respondent put forth minimal evidence in

support. She submitted the United States State Department's travel advisory for Colombia as well as some evidence that Petitioner had previous issues with drugs and alcohol. Both Respondent and K.P.C.A. stated that they had never witnessed any crime or act of terrorism in Colombia, or any reasonable risk of harm at the hands of Petitioner. This does not meet the standard to show that K.P.C.A. would be in a grave risk of harm if returned to Colombia.

### 5. Inhumane-conditions defense

A court may decline to return a child "if this would not be permitted by the fundamental principles of the requested State relating to the protection of human rights and fundamental freedoms." Convention, Art. 20. This "seldom-cited and somewhat obscure provision…[is] meant to be restrictively interpreted and applied…on the rare occasion that return of a child would utterly shock the conscience of the court or offend all notions of due process." *Sewald v. Reisinger*, 2009 U.S. Dist. LEXIS 3758, at *8 (M.D. Fla. Jan. 20, 2009). As counsel for Petitioner argued, and as this Court verified, there does not appear to be a single published case where a United States court has found another Convention-signatory State to meet this criterion. Respondent did not put forth any material evidence toward this defense and, accordingly, the Court finds that she did not meet her burden.

### III.    Conclusion

Since Petitioner has established his prima facie case of wrongful retention and Respondent has failed to meet her burden with respect to any affirmative defense, the Verified Petition for Return of a Child to Colombia [ECF 1] pursuant to Article 3 of the Hague Convention is **GRANTED**.

The Court **ORDERS** the parties to immediately meet and confer about the particulars for returning K.P.C.A. to Colombia, including but not limited to the person(s) who will accompany the child to Columbia, who will be responsible for the travel costs, the timing of said travel, and the temporary custodial arrangement between Petitioner and Respondent once K.P.C.A. arrives in Columbia. The parties shall notify the Court by email if they come to an agreement. If an agreement cannot be reached by September 6, 2022, the parties shall notify the Court by email of same and a hearing will be scheduled to resolve the remaining issues. Respondent is further **ORDERED** to remain in the State of Georgia with K.P.C.A., absent Court permission, until further notice.

**SO ORDERED** this 31st day of August, 2022.

Steven D. Grimberg
United States District Court Judge